# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| _____ | ) | |
| SCHAEFER SYSTEMS | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:22-cv-513 |
| | ) | |
| ALOFT MEDIA, LLC | ) | **Jury Trial Demanded** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## DECLARATORY JUDGMENT COMPLAINT OF NON-INFRINGEMENT

Plaintiff Schaefer Systems International, Inc. (hereinafter "Schaefer" or "Plaintiff"), in support of this Declaratory Judgment Complaint against Aloft Media, LLC (hereinafter "Aloft" or "Defendant") does hereby allege as follows:

## NATURE OF THE ACTION

1.     This case involves unlawful attempts by Defendant to extract and extort a baseless and unreasonable license from Schaefer for alleged patent infringement of five U.S. Patents: (1) U.S. Patent No. 10,042,823 (the "'823 Patent"); (2) U.S. Patent No. 10,078,623 (the "'623 Patent"); (3) U.S. Patent No. 10,372,793 (the "'793 Patent"); (4) U.S. Patent No. 10,482,164 (the "'164 Patent"); and (5) U.S. Patent No. 11,308,260 (the "'260 Patent") (collectively the "Asserted Patents").

2.     Beginning on March 4, 2022, and over the course of several exchanges of documents, email correspondence, and telephonic conferences thereafter, Defendant has repeated

its accusation that Schaefer's website, https://www.ssi-schaefer.com/en-us, infringes each and every one of the Accused Patents, and has demanded that Schaefer must take a license to the Accused Patents. As explained in greater detail below, Schaefer does not infringe any valid claim of any of the Asserted Patents. Moreover, Defendant's allegations of infringement were made in bad faith and are objectively baseless, in violation of the North Carolina Abusive Patent Assertion Act (N.C. Gen. Stat. §§ 75-140, et. seq.) (hereinafter the "APAA").

3.      Accordingly, Schaefer brings this action seeking: (1) a declaration under the Declaratory Judgment Act (28 U.S.C. § 2201) that Schaefer has not and does not infringe any valid and enforceable claim of any of the Asserted Patents; and (2) the entry of appropriate injunctive relief and the recovery of damages (including costs of suit and attorneys' fees) resulting from Defendant's unlawful and abusive conduct in violation of the APAA and other applicable law.

## THE PARTIES

4.      Plaintiff Schaefer Systems International, Inc. is a North Carolina corporation with a registered address and principal place of business at 10021 Westlake Drive, Charlotte, North Carolina 28273.

5.      Schaefer provides storage materials handling, robotics, warehouse management software, and autonomous driverless solutions to businesses throughout North America.

6.      Schaefer consults, designs, and manufactures innovative intralogistics storage and picking solutions for all types of industries.

7.      Schaefer is part of the SSI Schaefer Group, a global leader in logistics and materials handling, which was founded in 1937, having offices in over 70 countries, and employs more than 9,000 individuals.

2

8.     Schaefer is the owner and operator of https://www.ssi-schaefer.com/en-us, including each and every one of the web pages comprising that site (collectively, the "Accused Schaefer Website"). A print-out of the home page of the Accused Schaefer Website is attached hereto as Exhibit 12. Schaefer uses the Accused Schaefer Website to engage with customers and potential customers, as well as to market and sell its products and services.

9.     On information and belief, Defendant Aloft Media, LLC is a Texas limited liability company with an address at 211 West Tyler Street, Suite C-1, Longview, Texas 75601-6398.

10.     On information and belief, and according to the Texas Secretary of State's website, George A. Gordon is the registered agent and managing member of Defendant, and is affiliated with the following address: 6518 Ryeworth Drive, Frisco, Texas 75035.

11.     On information and belief, and according to the Texas Secretary of State's website, Jason Player is a member of Defendant, and is affiliated with the following address: 3118 Rouncival Drive, Longview, Texas 75605.

12.     On information and belief, and according to the Texas Secretary of State's website, Leslie Novy is a member of Defendant, and is affiliated with the following address: 1009 Riverwood Drive, Longview, Texas 75604.

13.     On information and belief, Aloft is a non-practicing entity.

14.     Non-practicing entities are colloquially referred to as "patent trolls."

15.     On information and belief, Defendant does not practice any of the Asserted Patents. Instead, Defendant's business model is predominantly directed to monetizing its patents, including the Asserted Patents, via licensing.

16.     In its pursuit of monetizing its patents, Defendant has also alleged patent infringement at least fourteen times in district court litigation, via complaints filed in the United

States District Court for the Eastern District of Texas, including against Adobe System Incorporated, Brookstone, Inc., Microsoft Corporation, Nokia Inc., Palm, Inc., Yahoo!, Inc., Compuware Corp., Google, Inc., Oracle Corporation, and SAP AG.

## JURISDICTION AND VENUE

17.     The Court has original and exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b) because this Complaint states claims arising under Acts of Congress, including the Patent Act, *i.e.*, 35 U.S.C. § 101 *et. seq.*

18.     The Court also has original and exclusive subject matter jurisdiction over these claims because this Complaint arises under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), in that it involves an actual case or controversy due to Defendant's accusation that Schaefer infringes the Asserted Patents and its repeated licensing demands made to Schaefer.

19.     Because the amount in controversy exceeds $75,000, and because Schaefer and Defendant are diverse parties, the Court also has original jurisdiction pursuant to 28 U.S.C. § 1332.

20.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims asserted or that may be asserted that are so related to claims within the original jurisdiction of this action that they form part of the same case or controversy under Article III of the United States Constitution, including over Schaefer's claim under the APAA (N.C. Gen. Stat. §§ 75-140 *et seq.*) because, as set forth below, the APAA claim is related to the claim(s) over which the Court has original jurisdiction.

21.     Pursuant to 28 U.S.C. §§ 1391(b), 1391(c), 1391(d), and 1400(b), venue is proper in the Western District of North Carolina (hereinafter "this District"), since Schaefer's principal place of business is in this District, and since a substantial part of the events giving rise to the claims in this Complaint occurred in this District. For example, by attempting to exact a patent

4

license from Schaefer, Defendant has directed its licensing efforts into this District. In other words, a substantial part of the events giving rise to Schaefer's claims occurred in this District, including Schaefer's use of the Accused Schaefer Website alleged to infringe the Accused Patents.

22. This Court has *in personam* jurisdiction over Defendant because Defendant hasknowingly and repeatedly directed its licensing activities into this District, not least as evidenced by its unlawful attempt to exact a license from Schaefer. By seeking out and threatening litigation against Schaefer, an entity known to exist under the laws of and operate in North Carolina, and in this District, Defendant should reasonably be expected to be subject to *in personam* jurisdiction in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### *The Five Asserted Patents*

23. All five of the Accused Patents are related in that they descend from a single patent application, and are thus part of the same patent 'family.' For example, all five of the Accused Patents share an identical specification and related claims. Accordingly, the relevant claim language identified below for any one of the Accused Patents—and the explanations related thereto—are relevant to Schaefer's claims and requested relief as it relates to *all* of the Accused Patents. The Accused Products will now be individually identified:

### 1) The '823 Patent

24. U.S. Patent No. 10,042,823 is titled "Hyperlink with Graphical Cue" and issued from Application No. 14/224,002, which was filed on March 24, 2014. The '823 Patent is attached hereto as Exhibit 1.

5

25.     The '823 Patent is a continuation of Application No. 12/334,068, filed on December 12, 2008, now U.S. Patent No. 8,682,961, which is a continuation of Application No. 11/384,957, filed on March 20, 2006, now U.S. Patent No. 7,529,795.

26.     The '823 Patent comprises thirty-one (31) claims, of which four (4) are independent claims and the remaining twenty-seven (27) claims are dependent claims.

27.     According to the '823 Patent, "[t]he present invention relates to computer-implemented techniques for improving the usefulness of hyperlinks in web pages."

28.     In the "Summary" section, the '823 Patent goes on to explain the alleged invention as follows:

> A computer program provides a first set of representations (e.g., textual representations) of a first set of hyperlinks. In response to selection by a user of one of the first set of hyperlink representations (such as by clicking on or hovering a cursor over the representation), the program displays a second set of representations (e.g., graphical representations) of a second set of hyperlinks. The user may select one of the second set of representations, in response to which the program navigates to the destination of the hyperlink. The second set of representations may, for example, be logos of companies, and the second set of hyperlinks may be hyperlinks to the companies' web sites.

See Exhibit 1, 2:15-26; *see also id*. at 15:36-16:40, Fig. 5A, Fig. 5B.

29.     The specification of the '823 Patent, often referred to as part of the 'intrinsic record,' describes an embodiment as follows:

> For example, referring to FIG. 5A, a web page 500 is shown according to one embodiment of the present invention. The web page 500 includes a first frame 502a displaying a first set of textual hyperlink representations 504a, and a second frame 502b displaying the contents of another web page.
>
> In the embodiment illustrated in FIG. 5A, the first set of hyperlink representations 504a includes hypertext 504a-h. In this example, the hypertext 506a-h includes text representing categories of news web sites. For example, hypertext 506a ("World News") represents the category of world news web sites, hypertext 506b ("Business News") represents the category of business news web sites, and so on. The particular number, selection, and categorization of hypertext 506a-h shown in FIG. 5A is provided merely as an example and does not constitute a limitation of the present invention.

The hyperlink representations 504a enable the user to access the underlying hyperlinks to external websites by hovering over selecting any of the hypertext 506a-h. The user may, for example, select a particular link either by clicking on one of the hypertext links 506a-h or by hovering a mouse cursor over one of the hypertext links 506a-h.

In response to receiving a selection of one of the hypertext links 506a-h from the user, the web page 500 displays a second set of hyperlink representations 504b. In the particular example illustrated in FIG. 5A, the user has clicked on or hovered the mouse cursor over hypertext 506h ("Stock Research"). In response, the web page 500 has displayed the second set of hyperlink representations 504b, which represent hyperlinks within the selected category. In other words, each of the hyperlink representations 508a-1 represents a hyperlink to a stock research web site.

More specifically, in the embodiment illustrated in FIG. 5A, each of the hyperlink representations 508a-1 is a graphic image of the logo of the web site that is the destination of the hyperlink. For example, hyperlink representation 508a is the logo of www.bigcharts.com, and the hyperlink representation 508a acts as a link to www.bigcharts.com.

Therefore, when the user selects (e.g., clicks on or hovers over) one of the second set of hyperlink representations 508a-1, the web browser displays the destination of the selected hyperlink in the frame 502b. For example, if the user selects hyperlink representation 508a (i.e., the logo of www.bigcharts.com), the web browser will navigate to and display the home page of www.bigcharts.com in frame 502b.

Different sets of hyperlinks are displayed as the user selects (e.g., clicks on or hovers over) different ones of the first set of hyperlinks 506a-h. For example, as shown in FIG. 5B, when the user selects hyperlink 506d ("UK News"), the web page 500 displays a set 504c of hyperlink representations 510a-j depicting logos of UK news web sites. If hovering is enabled to activate the first set 504a of links 506a-j, the user may quickly view the links in different categories by moving the mouse cursor over different ones of the first set 504a of links 506a-h. In a web browser, such a feature may be enabled using AJAX technology, through which all of the logos may be pre-downloaded with the web page 500, and then quickly displayed to the user without requiring additional accesses to the server.

Exhibit 1, 15:48-16:41

30.    The aforementioned embodiment is further demonstrated in Figure 5A of the '823

Patent, reproduced below:

7



Exhibit 1, Fig. 5A

31.     Claim 1 of the '823 reads as follows:

- An apparatus, comprising:

  - a non-transitory memory storing instructions; and
  - one or more processors in communication with the non-transitory memory, wherein the one or more processors execute the instructions to:
  - cause, after an access to a server, display of a first set of one or more representations of a first set of one or more hyperlinks without any first-set-related images used in the display of the first set of one or more representations in connection with a webpage that includes a second set of one or more representations of a second set of one or more hyperlinks that are pre-downloaded with the webpage, wherein the second set of one or more representations are initially hidden, and the second set of one or more representations take the form of hypertext including one or more textual representations of one or more hyperlinks;
  - allow receipt of a first input from a user that indicates a selection of one of the first set of representations of the first set of one or more hyperlinks, the receipt of the first input being implemented without Java;
  - cause, in response to receiving the first input from the user indicating the selection of one of the first set of representations of the first set of one or more hyperlinks, a substantially immediate display of the second set of one or more representations of the second set of one or more hyperlinks that are pre-downloaded with the webpage such that the second set of one or more representations of the second set of one or more hyperlinks are displayed in a menu in a same window as a corresponding one

8

of the first set of one or more representations of the first set of one or more hyperlinks, and at least partially below the corresponding one of the first set of one or more representations of the first set of one or more hyperlinks;

- allow receipt of a second input from the user indicating a selection of one of the second set of representations of the second set of one or more hyperlinks;
- cause, in response to receiving the second input from the user indicating the selection of one of the second set of one or more representations of the second set of one or more hyperlinks, **navigation to a destination** corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks; and
- in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, **display at least a portion of content associated with the destination simultaneously with the first set of one or more representations of the first set of one or more hyperlinks**, so as to allow continued review of the first set of one or more representations of the first set of one or more hyperlinks and continued review of the second set of one or more representations of the second set of one or more hyperlinks while the at least portion of the content is simultaneously displayed, for additional navigation to at least one additional destination and display of at least a portion of additional content which is also simultaneously displayed with the first set of one or more representations of the first set of one or more hyperlinks;
- wherein the apparatus is configured such that both the display of the first set of one or more representations of the first set of one or more hyperlinks and the display of the second set of one or more representations of the second set of one or more hyperlinks that are pre-downloaded with the webpage, are performed without requiring an additional access to the server;
- wherein the apparatus is further configured such that the webpage allows receipt of user input from the user in a form of hovering.

32.    As will be explained below in greater detail, the two emphasized claim terms/phrases above (*i.e.*, "navigation to a destination" and "display at least a portion of the content associated with the destination simultaneously with the first set of one or more representations of the first set of one or more hyperlinks") are most relevant to the instant Complaint, including to proving non-infringement and also demonstrating the objective baselessness and bad faith in Defendant's licensing demands.

33.    First, as to Schaefer's plea for declaratory relief, the absence of these two claim terms/phrases in the Accused Schaefer Website demonstrates that the Accused Schaefer Website

9

does not infringe the '823 Patent (or any of the other Accused Patents). Notably, these two aforementioned claim elements appear in each and every one of the independent claims of the '823 Patent, and so there can be no infringement unless both elements are met.

34.     Second, given how readily apparent it is that there is no infringement of any of the Accused Patents, and since the aforementioned non-infringement theories have been communicated to Defendant on several occasions, the objective baselessness and subjective bad faith of Defendant's licensing demand demonstrates Defendant's unlawful conduct under the APAA.

2)  The '623 Patent

35.     U.S. Patent No. 10,078,623 is titled "Hyperlink with Graphical Cue" and issued from Application No. 15/721,939, which was filed on October 1, 2017. The '623 Patent is attached hereto as Exhibit 2.

36.     The '623 Patent is a Continuation of Application No. 14/224,002, filed on March 24, 2014, now abandoned, which is a continuation of Application No. 12/334,068, filed on December 12, 2008, now Patent. No. 8,682,961, which is a continuation of Application No. 11/384,957, filed on March 20, 2006, now Patent No. 7,529,795.

37.     The '623 Patent comprises twenty-nine (29) claims, of which four (4) are independent claims and the remaining twenty-five (25) claims are dependent claims.

38.     According to the '623 Patent, "[t]he present invention relates to computer-implemented techniques for improving the usefulness of hyperlinks in web pages." Exhibit 2 at 1:22-24.

39.     Claim 1 of the '623 Patent reads as follows:

- An apparatus, comprising:

10

- a non-transitory memory storing instructions; and
- one or more processors in communication with the non-transitory memory, wherein the one or more processors execute the instructions to:
- cause, after an access to a server, display of a first set of one or more representations of a first set of one or more hyperlinks without any first-set-related images used in the display of the first set of one or more representations in connection with a web page that includes a second set of one or more representations of a second set of one or more hyperlinks that are pre-downloaded with the web page, wherein the second set of one or more representations are initially hidden, and the second set of one or more representations take the form of hypertext including one or more textual representations of the second set of one or more hyperlinks;
- allow receipt of a first input from a user including hovering that indicates a selection of one of the first set of representations of the first set of one or more hyperlinks, a detection of the hovering being implemented without Java;
- cause, in response to receiving the first input from the user indicating the selection of one of the first set of representations of the first set of one or more hyperlinks, a substantially immediate display of the second set of one or more representations of the second set of one or more hyperlinks that are pre-downloaded with the web page such that the second set of one or more representations of the second set of one or more hyperlinks are displayed in a menu in a same window as a corresponding one of the first set of one or more representations of the first set of one or more hyperlinks, and at least partially below the corresponding one of the first set of one or more representations of the first set of one or more hyperlinks;
- allow receipt of a second input from the user;
- cause, in response to receiving the second input, a visual emphasis of at least a portion of the web page;
- allow receipt of a third input from the user indicating a selection of one of the second set of representations of the second set of one or more hyperlinks; and
- cause, in response to receiving the third input from the user indicating the selection of one of the second set of one or more representations of the second set of one or more hyperlinks, **navigation to a destination** corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks;
- in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, **display content of the destination simultaneously with the first set of one or more representations of the first set of one or more hyperlinks**, so as to allow continued interaction with the first set of one or more representations of the first set of one or more hyperlinks and continued interaction with the second set of one or more representations of the second set of one or more hyperlinks while the content is simultaneously displayed, for additional navigation to at least one additional destination and display of additional content, while the first set of one or more representations of the first set of one or more hyperlinks is simultaneously displayed;
- wherein both the display of the first set of one or more representations of the first set of one or more hyperlinks and the display of the second set of one or more representations of the second set of one or more hyperlinks that are pre-downloaded with the web page, are performed without requiring an additional access to the server.

11

40.     Notably, the remaining independent claims of the '623 Patent (claims 13, 30, and 31) all contain limitations substantially identical to the emphasized language of Claim 1 (which is also substantially identical to the language in all four independent claims of the '823 Patent).

### 3)   The '793 Patent

41.     U.S. Patent No. 10,372,793 is titled "Hyperlink with Graphical Cue" and issued from Application No. 16/243,044, which was filed on January 8, 2019. The '793 Patent is attached hereto as Exhibit 3.

42.     The '793 Patent is a continuation of U.S. Application. No. 16/056,487 filed August 6, 2018, which in turn is a continuation of U.S. Application No. 14/224,002 filed March 24, 2014, now issued under U.S. Patent No. 10,042,823, which is a continuation of U.S. Application No. 12/334,068 filed December 12, 2008, now issued under U.S. Patent No. 8,682,961, which is a continuation of U.S. Application No. 11/384,957 filed March 20, 2006, now issued under U.S. Patent No. 7,529,795.

43.     The '793 Patent comprises thirty (30) claims, of which four (4) are independent claims and the remaining twenty-six (26) claims are dependent claims.

44.     According to the '793 Patent, "[t]he present invention relates to computer-implemented techniques for improving the usefulness of hyperlinks in web pages." Exhibit 3 at 1:24-26.

45.     Claim 1 of the '793 Patent reads as follows:

- A method, comprising:

- providing a web page including a set of one or more representations of one or more menu items and a set of one or more representations of one or more hyperlinks, the web page configured to:
- cause display of the set of one or more representations of one or more menu items of the web page without any images being used in the display of the set of one or more representations of

one or more menu items in connection with the web page, and with the set of one or more representations of one or more hyperlinks being initially hidden and taking the form of hypertext including one or more textual representations of one or more hyperlinks,

- allow receipt of a first input, in the form of hovering, that indicates a selection of one of the set of one or more representations of one or more menu items, the receipt of the first input being implemented without Asynchronous-JavaScript-and-XML (AJAX),
- cause, in response to receipt of the first input indicating the selection of the one of the set of one or more representations of one or more menu items, display of the set of one or more representations of one or more hyperlinks, such that the set of one or more representations of one or more hyperlinks is displayed in a menu in a same window as the one of the set of one or more representations of one or more menu items, and at least partially below the one of the set of one or more representations of one or more menu items,
- allow receipt of a second input that indicates a selection of one of the set of one or more representations of one or more hyperlinks, and
- cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, **navigation to a destination** corresponding to the one of the set of one or more representations of one or more hyperlinks, for causing display of at least a portion of content associated with the destination simultaneously with another instance of the set of one or more representations of one or more menu items, so as to allow review of the another instance of the set of one or more representations of one or more menu items and review of another instance of the set of one or more representations of one or more hyperlinks while the at least portion of content is simultaneously displayed, for use in causing additional navigation to at least one additional destination and display of at least a portion of additional content which is simultaneously displayed with yet another instance of the set of one or more representations of one or more menu items; and
- causing storage of the web page.

46.     Notably, for purpose of the non-infringement analysis below, independent claims 15 and 23 of the '793 Patent similarly refer to navigation to a "destination."

47.     Additionally, independent claims 23 and 29, respectively, contain the following language:

cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of a destination corresponding to the one of the set of one or more representations of one or more hyperlinks, **the destination including at least a portion of additional content displayed simultaneously with the set of one or more representations of one or more menu items**, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items.

'793 Patent, Claim 23

causing, using the web page code of the web page and in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of another web page corresponding to the one of the set of one or more representations of one or more hyperlinks, **the another web page including at least a portion of additional content simultaneously with the set of one or more representations of one or more menu items**, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items.

'793 Patent, Claim 29

48. Accordingly, each of the independent claims of the '793 Patent has either one or both of the emphasized limitations.

### 4) The '164 Patent

49. U.S. Patent No. 10,482,164 is titled "Hyperlink with Graphical Cue" and issued from Application No. 16,438,451, which was filed on June 11, 2019. The '164 Patent is attached hereto as Exhibit 4.

50. The '164 Patent is a continuation of U.S. Application No. 16/243,044 filed January 8, 2019, now issued under U.S. Patent No. 10,372,793, which in turn is a continuation of U.S. Application No. 16/056,487 filed August 6, 2018, which in turn is a continuation of U.S. Application No. 14/224,002 filed March 24, 2014, now issued under U.S. Patent No. 10,042,823, which is a continuation of U.S. Application No. 12/334,068 filed December 12, 2008, now issued under U.S. Patent No. 8,682,961, which is a continuation of U.S. Application No. 11/384,957 filed March 20, 2006, now issued under U.S. Patent No. 7,529,795.

51. The '164 Patent comprises eighty-eight (88) claims, of which four (4) are independent claims and the remaining eighty-four (84) claims are dependent claims.

14

52. According to the '164 Patent, "[t]he present invention relates to computer-implemented techniques for improving the usefulness of hyperlinks in web pages." Exhibit 4 at 1:26-28.

53. Claim 34 of the '164 Patent reads as follows:

- A method, comprising:

  - providing a non-transitory computer readable medium; and
  - storing, on the non-transitory computer readable medium, content for at least one web page, the at least one web page including a set of one or more representations of one or more menu items and a set of one or more representations of one or more hyperlinks, and the at least one web page configured to:
  - cause display of the set of one or more representations of one or more menu items of the at least one web page, without any images being used in the display of the set of one or more representations of one or more menu items, and with the set of one or more representations of one or more hyperlinks being initially hidden and taking the form of hypertext including one or more textual representations of one or more hyperlinks,
  - allow receipt of a first input, in the form of hovering, that indicates a selection of one of the set of one or more representations of one or more menu items,
  - cause, in response to receipt of the first input indicating the selection of the one of the set of one or more representations of one or more menu items, display of the set of one or more representations of one or more hyperlinks,
  - allow receipt of a second input that indicates a selection of one of the set of one or more representations of one or more hyperlinks, and
  - cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of at least one other web page that corresponds to the one of the set of one or more representations of one or more hyperlinks and that includes at least a portion of additional content **and the set of one or more representations of one or more menu items**, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is displayed with the set of one or more representations of one or more menu items.

54. Note that all four of the independent claims of the '164 Patent are method claims and that, in order to be infringed, "each of the steps [must be] performed within this country." *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).

55.     Note too that independent claim 45 also contains the same language as is emphasized above, *i.e.*, that the "another web page" must include "the set of one or more representations of one or more menu items."

## 5) The '260 Patent

56.     U.S. Patent No. 11,308,260 is titled "Hyperlink with Graphical Cue" and issued from Application No. 16/826,158, which was filed on March 20, 2020. The '260 Patent is attached hereto as Exhibit 5.

57.     The '260 Patent is a continuation of U.S. Application No. 16/056,487 filed August 6, 2018, now issued under U.S. Patent No. 10,691,874, which is a continuation of U.S. Application No. 14/224,002 filed March 24, 2014, now issued under U.S. Patent No. 10,042,823, which is a continuation of U.S. Application No. 12/334,068 filed December 12, 2008, now issued under U.S. Patent No. 8,682,961, which is a continuation of U.S. Application No. 11/384,957 filed March 20, 2006, now issued under U.S. Patent No. 7,529,795.

58.     The '260 Patent comprises twenty (20) claims, of which one (1) is an independent claim and the remaining nineteen (19) claims are dependent claims.

59.     According to the '260 Patent, "[t]he present invention relates to computer-implemented techniques for improving the usefulness of hyperlinks in web pages." Exhibit 5 at 1:24-26.

60.     Claim 1 of the '260 Patent reads as follows:

- A computer program product embodied on a non-transitory computer-readable medium, comprising:

  - computer code for causing display of a first set of representations of a first set of hyperlinks in connection with a web page, without any images being used in the display of the set of one or more representations of the first set of hyperlinks, and that includes a second set of representations of a second set of hyperlinks that are pre-downloaded with the web page and displayed immediately below a corresponding one of the first

16

set of representations in a menu format, wherein the second set of hyperlinks are preloaded and initially hidden;

- computer code for allowing receipt of a first input from a user indicating a selection of one of the first set of hyperlink representations;
- computer code for causing, in response to receiving the first input, a substantially immediate display of the second set of representations of the second set of hyperlinks that are pre-downloaded with the web page such that the second set of representations of the second set of hyperlinks are displayed in a same window as at least one of the hyperlinks of the first set of representations of the first set of hyperlinks;
- computer code for visually emphasizing a first hyperlink of the second set of hyperlinks in response to a second input from the user, wherein the visual emphasis is updated based on an update to the second input;
- computer code for allowing receipt of a third input from the user indicating a selection of one of the second set of hyperlink representations; and
- computer code for causing, in response to receiving the third input, **navigation to a destination** specified by the selected one of the second set of hyperlink representations;
- wherein each of the display of the first set of representations of the first set of hyperlinks and the display of the second set of representations of the second set of hyperlinks that are pre-downloaded with the web page, are performed without requiring an additional access to a server.

### *The Accused Schaefer Website*

61.     Schaefer operates the Accused Schaefer Website which is used to promote and sell Schaefer's products and services as described above.

62.     The Accused Schaefer Website is hosted on a network of servers located in Germany.

63.     In order to facilitate navigation, the Accused Schaefer Website uses a nested menu, as shown below, wherein a user can first select one of the top-level menu options in the ribbon (*e.g.*, "Markets") and then, within that category, make a further selection (*e.g.*, "Apparel"), causing navigation to the requested web page (*e.g.*, https://www.ssi-schaefer.com/en-us/market-sectors/apparel-logistics):

  

64. As it relates to the Asserted Patents, two key features of the Accused Schaefer Website are particularly noteworthy.

65. First, throughout the entirety of the user experience on the Accused Schaefer Website, the user is only ever routed amongst the various web *pages* that comprise the Accused Web*site*. In other words, all of the subsequent web *pages* that the user can reach from the Accused Schaefer Website's home page (https://www.ssi-schaefer.com/en-us) are part of the same web *site*.

66. In the example above, the user is able to navigate to https://www.ssi-schaefer.com/en-us/market-sectors/apparel-logistics. The requirement in each of the Asserted Patents that there be "navigation to a destination"—referring to an external website—is the first of two key reasons why there can be no infringement.

67. Second, unlike what is taught and claimed in the Asserted Patents, the "first set of one more representations of the first set of one more hyperlinks" (to the extent that element is even met) is no longer displayed once the user navigates to a subsequent web page. Rather, an entirely new web page is loaded, and, to the extent that the menu options on subsequent web pages *appear* to be similar to the menu options on the previous web page, it is the result of *repeating* those menu options, rather than continuing to display the first set without interruption.

68. These two principles are true for each and every web page of the Accused Schaefer Website and each instance of navigation amongst its various web pages.

18

***The Accused Schaefer Website Does Not Infringe the Asserted Patents***

69.     Each of the two 'key features' of the Accused Schaefer Website discussed in the preceding section form the basis of the **two distinct and mutually exclusive reasons** for why the Accused Schaefer Website cannot and does not infringe the various claims of the Asserted Patents. These two non-infringement positions will now be explained in greater detail:

*1)     There is No "Navigation to a Destination," i.e., an External Website*

70.     The difference between navigating amongst web pages on a single web site and navigating amongst different web sites helps to explain why the Accused Schaefer Website cannot infringe the Asserted Patents, and why Defendant's allegations of infringement are objectively baseless and made in bad faith.

71.     Recall that, in the specification shared amongst each of the Asserted Patents, the "second set of hyperlinks" associated with the "destination" are described as being "hyperlinks to the [other] companies' web sites," (*see, e.g.*, Exhibit 1, 2:25-26, 15:45-60).

72.     In describing Fig. 5A, the specification explains that "[t]he hyperlink representations 504a enable the user to access the underlying hyperlinks to ***external websites***" (Exhibit 1, 15:64-65) and goes on to explain that the "destination" must be an external "web site" as opposed to simply another web page on the same site:

> More specifically, in the embodiment illustrated in FIG. 5A, each of the hyperlink representations 508a-1 is a graphic image of the logo of ***the web site that is the destination of the hyperlink***. For example, hyperlink representation 508a is the logo of www.bigcharts.com, and the hyperlink representation 508a acts as a link to www.bigcharts.com.
>
> Therefore, when the user selects (e.g., clicks on or hovers over) one of the second set of hyperlink representations 508a-1, the web browser displays ***the destination*** of the selected hyperlink in the frame 502b. For example, if the user selects hyperlink representation 508a (i.e., the logo of www.bigcharts.com), the web browser will navigate to and display the home page of www.bigcharts.com in frame 502b.

19

Exhibit 1, 16:13-26.

73. Additionally, the Asserted Patents' specification clearly and intentionally uses "web page" and "web site" to mean different things, and associates the term "destination" only with the latter:

> The web page 300 is an example of *a web __page__ that may be part of such a web __site__*
>
> Note, however, that the *web __page__ 300 (and the web __site__ of which it is a part)* may generate revenue using any mechanism, not merely banner advertisements.
>
> The user may select one of the second set of representations, in response to which the program *navigates to the __destination__* of the hyperlink. The second set of representations may, for example, be logos of companies, *and the second set of hyperlinks may be hyperlinks to the companies' web __sites__*.
>
> The hyperlink representations 504a enable the user to access the underlying hyperlinks to *external web__sites__* by hovering over selecting any of the hypertext 506a-h.
>
> In the embodiment illustrated in FIG. 5A, the first set of hyperlink representations 504a includes hypertext 506a-h. In this example, the hypertext 506a-h includes text representing *categories of news web __sites__*

*See* Exhibit 1 at 3:65-67, 8:67-9:3, 15:44-46, 15:64-66, and 15:54-57, respectively.

74. Recall, as explained above, that navigation within the Accused Schaefer Website only ever results in the user reaching subsequent web pages, but never navigating to an external website or "destination" as that term is used in the Asserted Patents.

75. Accordingly, the Accused Schaefer Website cannot infringe any of the independent claims of the Asserted Patents which require "navigation to a destination" or otherwise refer to a "destination," since the Accused Schaefer Website only facilitates navigation amongst web pages on a single web site.

20

76. The table below comprises a non-exhaustive list of the relevant claim language from the independent claims of the Asserted Patents that cannot be satisfied on account of the aforementioned non-infringement position:

| Patent | Claim | Relevant Claim Language |
|--------|-------|--------------------------|
| '823 | 1 | cause, in response to receiving the second input from the user indicating the selection of one of the second set of one or more representations of the second set of one or more hyperlinks, ***navigation to a destination*** corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks; and<br><br>in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, ***display at least a portion of content associated with the destination***…<br><br>…for ***additional navigation to at least one additional destination*** and display of at least a portion of additional content… |
| '823 | 23 | cause, in response to receiving the second input from the user indicating the selection of one of the second set of one or more representations of the one or more hyperlinks, ***navigation to a destination*** corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks; and<br><br>in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks, ***display at least a portion of content of the destination***…<br><br>…for ***additional navigation to at least one additional destination*** and display of at least a portion of additional content… |
| '823 | 30 | in response to receiving the second input from the user indicating the selection of one of the second set of one or more representations of the second set of one or more hyperlinks, ***navigating to a destination*** corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks; and<br><br>in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, ***displaying at least a portion of content associated with the destination***… |

| | | |
|---|---|---|
| | | …for ***additional navigation to at least one additional destination*** and display of at least a portion of additional content… |
| '823 | 31 | in response to detecting the second input from the user indicating the selection of one of the second set of one or more representations of the one or more hyperlinks, ***navigating, without using Java, to a destination*** corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks; and<br><br>in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks, ***displaying at least a portion of content of the destination***…<br><br>…for ***additional navigation to at least one additional destination*** and display of at least a portion of additional content… |
| | | |
| '623 | 1 | cause, in response to receiving the third input from the user indicating the selection of one of the second set of one or more representations of the second set of one or more hyperlinks, ***navigation to a destination*** corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks;<br><br>in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, ***display content of the destination***…<br><br>…for ***additional navigation to at least one additional destination*** and display of additional content… |
| '623 | 13 | cause, in response to receiving the third input from the user indicating the selection of one of the second set of one or more representations of the one or more hyperlinks, ***navigation to a destination*** corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks;<br><br>in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks, ***display content of the destination***…<br><br>…for ***additional navigation to at least one additional destination*** and display of additional content… |
| '623 | 27 | in response to receiving the third input from the user indicating the selection of one of the second set of one or more representations of the second set of one or more hyperlinks, ***navigate to a destination*** corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks; |

| | | |
|---|---|---|
| | | in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, ***display content of the destination***… <br><br> …for ***additional navigation to at least one additional destination*** and display of additional content… |
| '623 | 29 | in response to detecting the third input from the user indicating the selection of one of the second set of one or more representations of the one or more hyperlinks, ***navigating, without using Java, to a destination*** corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks; <br><br> in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks, ***display content of the destination***… <br><br> …for ***additional navigation to at least one additional destination*** and display of additional content… |
| | | |
| '793 | 1 | cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, ***navigation to a destination*** corresponding to the one of the set of one or more representations of one or more hyperlinks, for ***causing display of at least a portion of content associated with the destination***… <br><br> …for use in ***causing additional navigation to at least one additional destination*** and display of at least a portion of additional content… |
| '793 | 15 | cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, ***navigation to a destination*** corresponding to the one of the set of one or more representations of one or more hyperlinks, for causing display of at least a portion of additional content associated with the destination |
| '793 | 23 | cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, ***display of a destination*** corresponding to the one of the set of one or more representations of one or more hyperlinks |
| | | |
| '260 | 1 | computer code for causing, in response to receiving the third input, ***navigation to a destination*** specified by the selected one of the second set of hyperlink representations; |

### 2) *Each Web Page Has A Unique Instance of Menu Options*

77.     Recall that the Asserted Patents teach and claim that:

> in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, **display at least a portion of content associated with the destination simultaneously with the first set of one or more representations of the first set of one or more hyperlinks**

*E.g.*, Exhibit 1, Claim 1.

78.     In other words, the "first set of one or more representations of the first set of one or more hyperlinks" (which Defendant correlates to the first layer of menu options) must continue to be displayed even after navigation.

79.     In their respective specifications, the Asserted Patents describe the prior art as follows:

> To identify the destination of the web page, the user may be required to ***navigate to that web page*** (by selecting the hyperlinked text) and view it…it is tedious and time-consuming for the user to identify the destination of the hyperlink and therefore to decide whether to navigate to that destination.

> What is needed, therefore, are ***improved techniques for providing visual representations of hyperlinks***

Exhibit 1, 1:52-60, 2:10-11.

80.     The proposed solution offered by the Asserted Patents is to provide a "visual representation[] of [the] hyperlinks" associated with the possible destination web sites that a user may wish to navigate to. This way, according to the Asserted Patents, a user can make his or her determination prior to (and without) actually navigating to that destination.

81.     In other words, whilst remaining at the initial web page (and continuing to view the original menu options), and before actually navigating away from the initial web page, the user is provided with a *visual preview of a possible destination web site*.

82.     In the Accused Patents, this feat is accomplished by envisioning a web page that includes a "first frame" (displaying "a first set of textual hyperlink representations") and a "second frame" (displaying "the contents of another web page"):

> For example, referring to FIG. 5A, a web page 500 is shown according to one embodiment of the present invention. The web page 500 includes a first frame 502a displaying a first set of textual hyperlink representations 504a, and a second frame 502b displaying the contents of another web page.

Exhibit 1, 15:48-52.

83.     This concept is best illustrated by the patents' own Fig. 5A (below, emphasis added), showing that the "web page 500" (shown in **blue**) comprises a "first frame 502a" (shown in **red**) and a "second frame 502b" (shown in **green**).



84.     The patents' specifications goes on to describe the alleged benefit of doing so:

> Therefore, when the user selects (e.g., clicks on or hovers over) one of the second set of hyperlink representations 508a-l, the web browser displays the destination of the selected hyperlink *in the frame* 502b. For example, if the user selects hyperlink representation 508a (i.e., the logo of www.bigcharts.com), the web browser will navigate to and display the home page of www.bigcharts.com in frame 502b.

25

In a web browser, such a feature may be enabled using AJAX technology, through which all of the logos may be pre-downloaded with the web page 500, and then quickly displayed to the user *without requiring additional accesses to the server*.

One advantage of the techniques disclosed herein is that hyperlink representations (e.g., the hyperlinks 504b and 504c) may be displayed to the user essentially instantaneously. Such techniques, therefore, provide the user with a method of scanning through links that is more intuitive and thus quicker for users than traditional techniques.

Exhibit 1, 16:20-52

85. In fact, this perceived benefit also appears in the body of several of the Asserted Claims, including Claims 1 and 30 of the '823 Patent:

so as to *allow continued review* of the first set of one or more representations of the first set of one or more hyperlinks and *continued review* of the second set of one or more representations of the second set of one or more hyperlinks while the at least portion of the content is simultaneously displayed

86. In the Accused Patents' own words, and as claimed throughout, an infringing instrumentality must "display at least a portion of content associated with the destination (*e.g.*, as in "second frame 502b") simultaneously with the first set of one or more representations of the first set of one or more hyperlinks (*e.g.*, as in "first frame 502a").

87. This use of "frames" in order to (1) continue to maintain and display the navigation options in a "first frame" (*e.g.*, 502a) while (2) allowing the user to see "visual representations" (*i.e.*, "at least a portion of content associated with the destination") of the hyperlinks in a "second frame" (*e.g.*, 502b) has nothing to do with how the Accused Schaefer Website enables navigation.

88. The Accused Schaefer Website comprises a collection of individual web pages, each with its own set of menu options. Rather than continue to display the original menu options in a "first frame" while offering a preview of some additional content in a "second frame," users of the Accused Schaefer Website must navigate to an entirely different web page in order to see

26

any content from that page, wherein the original menu options are replaced by the menu options on that subsequent page.

89.     For example, when a user hovers over "Markets" and prior to selecting "Apparel" (as depicted in the screenshots above), there is no "visual representation" of any portion of the content that is available at the underlying URL, https://www.ssi-schaefer.com/en-us/market-sectors/apparel-logistics (the "Apparel Web Page"). There is no "second frame" wherein the user is offered a preview of the content on the Apparel Web Page.

90.     Instead, in order to view any of the content on the Apparel Web Page (an excerpt of which is shown below), the user must actually navigate away from https://www.ssi-schaefer.com/en-us (the "Schaefer Home Page"), wherein the web browser retrieves and subsequently loads the Apparel Web Page.

91.     Contrary to the teachings of the Asserted Patents, and critical to any reasonable infringement analysis, the user is not able to *preview* any of the content from the Apparel Web Page (*e.g.*, the image or any of the text in the screenshot below) before navigating to that web page.



Exhibit 14.

92.     Critically, in navigating away from the Schaefer Home Page, the web browser no longer displays any of the menu options associated with the Schaefer Home Page and instead retrieves and displays the menu options associated with the Apparel Web Page.

93.     Accordingly, to the extent the Asserted Patents embody a 'solution' to a 'problem' in the prior art relating to navigating across various web sites, the Accused Schaefer Website does not implement the Accused Patents' 'solution' and thus, cannot infringe.

94.     A simple comparison of the publicly available page source code of the Schaefer Home Page and the Apparel Web Page reveals that the menu options on each of the respective web pages is a unique instance. *Compare* <u>Exhibit 13</u>, with <u>Exhibit 15</u>. For example, whereas <!—NAVBAR--> begins at line 853 of the Schaefer Home Page (<u>Exhibit 13</u>, pg. 12), that same function begins at line 848 of the Apparel Web Page (<u>Exhibit 15</u>, pg. 12).

95.     Additionally, an inspection of the publicly available network traffic that is generated when a user navigates from the Schaefer Home Page to the Apparel Web Page demonstrates that new menu options are retrieved and loaded.

96.     Accordingly, in terms of the Asserted Patents' claim language, which must be satisfied in order for there to be any possibility of infringement, "in response to the navigation to the destination," the Accused Schaefer Website **does not** "display at least a portion of content associated with the destination simultaneously with the first set of one or more representations of the first set of one or more hyperlinks." *E.g.*, <u>Exhibit 1</u>, Cl. 1.

97.     The table below comprises a non-exhaustive list of the relevant claim language from the independent claims of the Asserted Patents that cannot be satisfied on account of the aforementioned non-infringement position:

28

| Patent | Ind. Claim | Relevant Claim Language |
|--------|-----------|------------------------|
| '823 | 1 | in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, display at least a portion of content associated with the destination ***simultaneously with the first set of one or more representations of the first set of one or more hyperlinks, so as to allow continued review of the first set of one or more representations of the first set of one or more hyperlinks and continued review of the second set of one or more representations of the second set of one or more hyperlinks*** while the at least portion of the content is simultaneously displayed, for additional navigation to at least one additional destination and display of at least a portion of additional content which is also ***simultaneously displayed with the first set of one or more representations of the first set of one or more hyperlinks***; |
| '823 | 23 | in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks, display at least a portion of content of the destination ***simultaneously with the first set of one or more representations of one or more menu items, so as to allow continued review of the first set of one or more representations of the one or more menu items and continued review of the second set of one or more representations of the one or more hyperlinks*** while the at least portion of the content is simultaneously displayed, for additional navigation to at least one additional destination and display of at least a portion of additional content which is also ***simultaneously displayed with the first set of one or more representations of one or more menu items***; |
| '823 | 30 | in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, displaying at least a portion of content associated with the destination ***simultaneously with the first set of one or more representations of the first set of one or more hyperlinks, so as to allow continued review of the first set of one or more representations of the first set of one or more hyperlinks and continued review of the second set of one or more representations of the second set of one or more hyperlinks*** while the at least portion of the content is simultaneously displayed, for additional navigation to at least one additional destination and display of at least a portion of additional content which is also ***simultaneously displayed with the first set of one or more representations of the first set of one or more hyperlinks***; |
| '823 | 31 | in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks, displaying at least a portion of content of the |

| | | |
|---|---|---|
| | | destination *simultaneously with the first set of one or more representations of one or more menu items, so as to allow continued review of the first set of one or more representations of the one or more menu items and continued review of the second set of one or more representations of the one or more hyperlinks* while the at least portion of the content is simultaneously displayed, for additional navigation to at least one additional destination and display of at least a portion of additional content which is also *simultaneously displayed with the first set of one or more representations of one or more menu items*; |
| '623 | 1 | in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, display content of the destination *simultaneously with the first set of one or more representations of the first set of one or more hyperlinks, so as to allow continued interaction with the first set of one or more representations of the first set of one or more hyperlinks and continued interaction with the second set of one or more representations of the second set of one or more hyperlinks* while the content is simultaneously displayed, for additional navigation to at least one additional destination and display of additional content, *while the first set of one or more representations of the first set of one or more hyperlinks is simultaneously displayed*; |
| '623 | 13 | in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks, display content of the destination *simultaneously with the first set of one or more representations of one or more menu items, so as to allow continued interaction with the first set of one or more representations of one or more menu items and continued interaction with the second set of one or more representations of the one or more hyperlinks* while the content is simultaneously displayed, for additional navigation to at least one additional destination and display of additional content, *while the first set of one or more representations of one or more menu items is simultaneously displayed*; |
| '623 | 27 | in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the second set of one or more hyperlinks, display content of the destination *simultaneously with the first set of one or more representations of the first set of one or more hyperlinks, so as to allow continued interaction with the first set of one or more representations of the first set of one or more hyperlinks and continued interaction with the second set of one or more representations of the second set of one or more hyperlinks* while the content is simultaneously displayed, for additional navigation to at |

30

| | | least one additional destination and display of additional content, ***while the first set of one or more representations of the first set of one or more hyperlinks is simultaneously displayed***; |
|---|---|---|
| '623 | 29 | in response to the navigation to the destination corresponding to the selected one of the second set of one or more representations of the one or more hyperlinks, display content of the destination ***simultaneously with the first set of one or more representations of one or more menu items, so as to allow continued interaction with the first set of one or more representations of one or more menu items and continued interaction with the second set of one or more representations of the one or more hyperlinks*** while the content is simultaneously displayed, for additional navigation to at least one additional destination and display of additional content, ***while the first set of one or more representations of one or more menu items is simultaneously displayed***; |
| | | |
| '793 | 15 | cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, navigation to a destination corresponding to the one of the set of one or more representations of one or more hyperlinks, for causing display of at least a portion of additional content associated with the destination simultaneously with another instance of the set of one or more representations of one or more menu items, ***so as to allow access to the set of one or more representations of one or more menu items and access to the set of one or more representations of one or more hyperlinks while the at least portion of additional content is simultaneously displayed*** with the another instance of the set of one or more representations of one or more menu items; and |
| '793 | 23 | cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of a destination corresponding to the one of the set of one or more representations of one or more hyperlinks, the destination including at least a portion of additional content displayed ***simultaneously with the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items***. |
| '793 | 29 | causing, using the web page code of the web page and in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of another web page corresponding to the one of the set of one or more representations of one or more hyperlinks, the another web page including at least a portion of additional content ***simultaneously with the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or*** |

| | | |
|---|---|---|
| | | *more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items*. |
| | | |
| '164 | 34 | cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of at least one other web page that corresponds to the one of the set of one or more representations of one or more hyperlinks and that includes at least a portion of additional content *and the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is displayed with the set of one or more representations of one or more menu items*. |
| '164 | 45 | causing, using the web page code of the web page and in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of another web page corresponding to the one of the set of one or more representations of one or more hyperlinks, the another web page including at least a portion of additional content *and the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is displayed with the set of one or more representations of one or more menu items*. |

98.    Combined, the aforementioned two non-infringement theories cover fifteen of the seventeen asserted independent claims of the Asserted Patents.

99.    Specifically, as depicted in the table below, ten (10) of the claims are covered by both non-infringement theories (*i.e.*, claims for which there are X's in both columns), and an additional five (5) claims are covered by at least one of the aforementioned non-infringement theory (*i.e.*, claims for which there is an X in one of the two columns).

| Patent | Claim | Navigation to a Destination | Continued Interaction with First Menu Options after Navigation |
|---|---|---|---|
| '832 | 1 | X | X |
| '832 | 23 | X | X |
| '832 | 30 | X | X |
| '832 | 31 | X | X |
| | | | |
| '623 | 1 | X | X |

32

| | | | |
|---|---|---|---|
| '623 | 13 | X | X |
| '623 | 27 | X | X |
| '623 | 29 | X | X |
| | | | |
| '793 | 1 | X | N/A |
| '793 | 15 | X | X |
| '793 | 23 | X | X |
| '793 | 29 | N/A | X |
| | | | |
| '164 | 1 | N/A | N/A |
| '164 | 22 | N/A | N/A |
| '164 | 34 | N/A | X |
| '164 | 45 | N/A | X |
| | | | |
| '260 | 1 | X | N/A |

100.    The remaining two claims which are not covered by either of the aforementioned non-infringement theories (*i.e.*, Claims 1 and 22 of the '164 Patent) are likewise not infringed by the Accused Schaefer Website as explained below, at least because: (1) there is no "set" of second-level menu options that is displayed "at least partially below" a corresponding first-level menu option; (2) there is no web page that is stored *after* the browser navigates to and displays a subsequent web page; and (3) the Accused Schaefer Website is hosted on servers residing in Germany, not in the U.S. These will now be explained in greater detail.

101.    Claim 1 of the '164 Patent contain the following limitation:

cause, in response to receipt of the first input indicating the selection of the one of the set of one or more representations of one or more menu items, display of the set of one or more representations of one or more hyperlinks, ***such that the set of one or more representations of one or more hyperlinks is displayed*** in a menu in a same window as the one of the set of one or more representations of one or more menu items, and ***at least partially below the one of the set of one or more representations of one or more menu items***

causing storage of the web page

33

102.    As to the first limitation, the Accused Schaefer Website does not, at any point, display a "set" of second-level menu options "at least partially below" the corresponding first-level menu option.

103.    Specifically, as depicted in the screenshot below, each web page of the Accused Schaefer Website comprises a set of eight "representations of one or more menu items" or first-level menu options—*i.e.*, 'Fulfilment Solutions,' 'Markets,' 'Products,' 'Supply Chain Software,' 'Best Practices & Trends,' 'Success Stories,' 'Customer Service & Support,' and 'Company.'



104.    Claim 1 of the '164 Patent requires that "the set of one or more representations of one or more hyperlinks" (*i.e.*, the second-level menu options) are displayed "*at least partially below*" the corresponding first-level menu item.

105.    However, as depicted below, the second-level menu options corresponding to *seven of the eight* first-level menu options are not displayed "at least partially below" their respective first-level menu options (as shown using dotted-red lines):

| First-Level Menu Option | Second-Level Menu Options (not displayed "at least partially below" the first-level menu option) |
|---|---|
| 'Markets' | ![Markets menu screenshot showing SSI SCHAEFER logo, Fulfillment Solutions, Markets, and options: Apparel, Industrial, Food Retail, Food & Beverage, Healthcare & Cosmetics, Retail & Wholesale, Waste/Environmental] |

34

| | |
|---|---|
| 'Products' |  |
| 'Supply Chain Software' | |
| 'Best Practices & Trends' | |
| 'Success Stories' | |



| 'Customer Service & Support' | |
| 'Company' | |

106.   Additionally, as shown below, the only remaining first-level menu option (*i.e.*, 'Fulfilment Solutions') for which the corresponding second-level menu options are displayed "partially below" only comprises ***one*** (*i.e.*, not a "set of") second-level menu option which comprises a hyperlink to another web page (*i.e.*, 'Introduction to ASRS'):



36

107.    Specifically, as depicted in the three images below, selecting any of the remaining three second-level menu options (*i.e.*, 'Supply Chain Process,' 'Supply Chain Strategy,' and 'Partnering and Consulting') causes a third-level of menu options to be displayed (green boxes, below), rather than "display of another web page" as required by Claim 1:



108. Accordingly, the Accused Schaefer Website does not comprise any first-level menu option for which there is a "set" of second-level menu options that are "at least partially below" the corresponding first-level menu option.

109. For at least this reason, Claim 1 of the '164 Patent is not infringed.

110. Claim 1 of the '164 Patent also contains the following limitation: "causing storage of the web page."

111. Critically, this limitation is the final limitation of Claim 1, and, because of the order of the claim steps, must be performed after the "another web page" is displayed. *See, e.g.*, Exhibit 4, 6:21-35, Cl. 14 ("the web page is part of a system including a server on which the *web page is stored and from which the web page is served*"); Cl. 22 ("storing the web page on at least one server, in order to…").

112. In other words, in order to infringe Claim 1 of the '164 Patent, a first web page must be stored *after* the browser navigates to and displays a subsequent web page.

113. However, to the extent any components of a first web page of the Accused Schaefer Website are stored, such storage takes place *prior to* navigation to and display of any subsequent web page(s) of the Accused Schaefer Website.

114. Accordingly, for at least this additional reason, Claim 1 of the '164 Patent is not infringed.

115. Moreover, the Accused Schaefer Website is hosted on servers residing overseas, in Germany.

116. As Defendant knows (or should know), "a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country." *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).

38

117.    To the extent the "causing storage of the web page" step is performed at all, it is not performed within this country.

118.    Accordingly, for at least this additional reason, Claim 1 of the '164 Patent is not infringed.

119.    Claim 22 of the '164 Patent is a method claim and contains the following limitation: "storing the web page on at least one server."

120.    In other words, Claim 22 requires that the *entire* "web page" (including, *e.g.*, the entire HTML script and all of the other content, including image files, etc. necessary to display the web page) be stored on a ***single server***.

121.    Critically, Claim 22 does contemplate that "the [entire] web page" may be stored on additional servers as well ("storing the web page on at least one server"). But, in order to infringe, there must be *at least one server* on which the *entire web page* is stored.

122.    As the '164 Patent recognizes, a "web page" is an aggregated view of various web content, "including HTML and/or other web content," which may (and often is) retrieved from various sources, including from more than one server. Exhibit 4, 6:21-44; *id.* at 15:54-59 (referring to "the contents of another web page").

123.    As demonstrated by its source code, the various web pages of the Accused Schaefer Website comprise a vast amount of content, all of which is necessary in order to generate and display the respective web pages. *See, e.g.*, Exhibit 13 and Exhibit 15 (page source code for the Schaefer Home Page (Exhibit 12) and Apparel Web Page (Exhibit 14), respectively).

124.    As it is used in Claim 22, "the web page" necessarily refers to the collection of each and every piece of content that is required in order to generate a web page, including a web page of the Accused Schaefer Website.

125.    For example, the Schaefer Home Page alone, https://www.ssi-schaefer.com/en-us, comprises over 270 image files (.JPG). *See* Exhibit 12. Defendant has never alleged (nor would it be true) that all of the content which comprises the Schaefer Home Page (or any other web page alleged to infringe) is stored on a single Schaefer server.

126.    For at least this reason, Claim 22 of the '164 Patent is not infringed.

127.    Moreover, as with Claim 1, the "storing the web page on at least one server" claim step of Claim 22 is not performed (if at all) within the United States.

128.    For at least this additional reason, Claim 22 of the '164 Patent is not infringed.

### *Defendant's Demand Letter and Conduct During Licensing Negotiations*

129.    Defendant first contacted Schaefer via letter dated March 4, 2022, attached hereto as Exhibit 6 (hereinafter the "Demand Letter"). The Demand Letter included a draft proposed 'Patent License Agreement' between Defendant and Schaefer as well as a single claim chart, charting Claim 23 of the '793 Patent against the Accused Schaefer Website.

130.    In its Demand Letter, Defendant acknowledged that it was contacting and offering licenses not just to Schaefer but also to "other companies like [Schaefer] that we believe may be infringing…." Exhibit 6, pg. 1.

131.    On information and belief, Defendant has offered to license (and licensed) the Accused Patents to hundreds of entities, across multiple industries. *See, e.g.*, Exhibit 17.

132.    Notably, as described above, and as demonstrated in each of the tables above, Claim 23 of the '793 Patent contains **both** of the claim elements that clearly are not met by the Accused Schaefer Website.

133. First, Claim 23 requires navigation to and "display of a destination," *i.e.*, an external website. However, as explained above, the navigation relevant to the Accused Schaefer Website is amongst web pages on a single web site, and no "destination" is ever reached or displayed.

134. Second, Claim 23 further requires that "the destination…[is] displayed simultaneously with the set of one or more representations of one or more menu items." However, as explained above, navigation amongst the various web pages of the Accused Schaefer Website generates new instances of the menu options.

135. Since its initial Demand Letter, Defendant has contacted Schaefer numerous times in a directed and overt effort to exhaust Schaefer into accepting a license to a portfolio of patents which Schaefer does not infringe. Specifically, Defendant made contact with Schaefer on at least the following occasions:

- May 3, 2022 (email);
- May 4, 2022 (email);
- May 5, 2022 (email);
- May 9, 2022 (three separate emails and telephonic conference);
- June 24, 2022 (email);
- June 27, 2022 (email);
- July 13, 2022 (email);
- July 26, 2022 (email);
- September 13, 2022 (telephonic conference); and
- September 20, 2022 (email)

136. During the Parties' numerous exchanges, Schaefer has repeatedly explained to Defendant its concerns with Defendant's theory of infringement.

137. Rather than acknowledge that the '793 Patent bears no relationship to the functionality of the Accused Schaefer Website, Defendant's response to Schaefer's thorough and repeated explanations was to double down and threaten Schaefer with additional related patents in Defendant's portfolio.

41

138.     First, on May 9, 2022, Defendant transmitted to Schaefer fifteen (15) additional claim charts corresponding to three additional claims of the '793 Patent (Exhibit 9) as well as four claim charts for each of the '823, Patent (Exhibit 7) '623 Patent (Exhibit 8), and '164 Patent (Exhibit 10).

139.     Additionally, on September 20, 2022, Defendant transmitted to Schaefer a claim chart for the '260 Patent. Exhibit 11.

140.     Along with the additional barrage of claim charts—which suffer from the same deficiencies as the original claim chart relating to the '793 Patent—Defendant transmitted a draft license agreement (*see, e.g.*, Exhibit 6, pgs. 8-12)) as well as the following monetary demand:

> Aloft Media is licensing their entire portfolio, pending applications, new applications and any IP acquired in the future. It would cover SS Schaefer and any and all subsidiaries. There are actually two prices based on confidentiality.
>
>   1. $58,250 – One-time payment for a fully confidential agreement.
>      OR
>   2. $46,60 – One-time payment for an agreement that would allow Aloft Media to list SS Schaefer. as licensee on a "Licensee List" that can only be shared under Rule 408. (attached) There would be NO mention in the public domain such as press releases, website lists etc.  I've attached a copy of the licensee list for you to review.

Exhibit 16.

141.     Defendant's Demand Letter used the following language to mask its true intention of extorting a quick license payment under the threat that any license amount would be preferable to litigation:

> George Street Partners ("GSP") is our authorized licensing agent.  Todd Schmidt, an agent of GSP, will be contacting you within the next few days regarding this licensing opportunity.  Aloft Media, LLC, through GSP, is presently willing discuss licensing terms at preferential rates for your prompt resolution of this matter, thereby avoiding costly legal entanglements for both sides.  If you have any immediate questions, please contact Todd Schmidt directly.  His contact information is below.

Exhibit 6, pg. 2.

*Defendant's Conduct Violates the North Carolina Abusive Patent Assertion Act (the APAA)*

142.    The APAA guidelines explicitly provide that "[a] court may consider [several] factors as evidence that a person has made a bad-faith assertion of patent infringement. *See* APAA, § 75-143(a). Several of the enumerated factors support a finding that Defendant has made a bad-faith patent assertion in this case.

143.    First, under § 75-143(a)(2), bad faith patent infringement can be found if "[p]rior to sending the demand, the person failed to conduct an analysis comparing the claims in the patent to the target's products, services, and technology, or the analysis was done but does not identify specific areas in which the products, services, and technology are covered by the claims in the patent."

144.    Here, although Defendant's Demand Letter and licensing demands were accompanied with various claim charts (*see* Exhibit 7 through Exhibit 11), Defendant's analysis was woefully inadequate in that it failed to identify the infringing features of the Accused Schaefer Website with reasonable specificity.

145.    For example, Defendant's claim charts fail to sufficiently identify any external website that is (or can be) accessed or navigated to or from the Accused Schaefer Website.

146.    As another example, Defendant's claim charts fail to sufficiently identify any menu items that are available both on the Schaefer Home Page and on any subsequent web page of the Accused Schaefer Website.

147.    As yet another example, Defendant's claim charts fail to explain if or how any web page of the Accused Schaefer Website is stored, including after a subsequent web page is displayed, including whether or not such storage takes place on a single server or not.

148.    As yet another example, Defendant's claim charts fail to identify a single "set" of second-level menu options that are "partially below" a first menu option.

149.    As yet another example, Defendant failed to investigate or to consider that the Accused Schaefer Website is hosted on servers residing in Germany, and that it therefore cannot infringe any method claims that require 'storage' of the Accused Schaefer Website and its web pages. On information and belief, this information would have been readily available by inspecting publicly available network traffic relating to the Accused Schaefer Website.

150.    Second, under § 75-143(a)(5), bad faith patent infringement can be found if "[t]he person offers to license the patent for an amount that is not based on a reasonable estimate of the value of the license, or the person offers to license the patent for an amount that is based on the cost of defending a potential or actual lawsuit."

151.    On information and belief, the monetary demand made to Schaefer (*see* Exhibit 16) is substantially similar (if not identical) to the licensing demands made to the various other entities which Defendant admitted to targeting as part of its monetization strategy. *See* Exhibit 6, pg. 1 (referring to "other companies like [Schaefer] that we believe may be infringing…."); *id.* (admitting that "[s]ome of these patents have already been licensed to over 520 large international corporations, and we trust you will want to join them."). Defendant has never represented that its offer to Schaefer is specifically tailored or based in any way on Defendant's perceived "value" of the license to Schaefer.

152.    Additionally, in Defendant's own Demand Letter, Defendant admits that the amount of its demand is "based on the cost of defending a potential or actual lawsuit" rather than on a reasonable estimate of the value of the license." *Compare* § 75-143(a)(5), *with* Exhibit 6, pg.

44

2 (Defendant stating that it is "willing [to] discuss licensing terms at preferential rates for [Schaefer's] prompt resolution of this matter, thereby avoiding costly legal entanglements…").

153.     Accordingly, the factor enumerated in § 75-143(a)(5) supports a finding of bad-faith assertion of patent infringement by Defendant.

154.     Third, under § 75-143(a)(6), bad faith patent infringement can be found if "[t]he claim or assertion of patent infringement is meritless, and the person knew or should have known that the claim or assertion is meritless…."

155.      Here, as explained above, the Accused Schaefer Website cannot infringe any independent claim of the Asserted Patents, both because (1) there is no "navigation to a destination," *i.e.*, to an external website, and (2) content from a subsequent web page is never displayed simultaneously with the menu options on a first web page, *i.e.*, the user cannot preview content in a 'second frame' while continuing to view menu options in a 'first frame.'

156.     Additionally, there is no "***set*** of one more representations of one or more hyperlinks" that is displayed "at least ***partially below*** the one of the set of one or more representations of one more menu items." *See* '164 Patent, Cls. 1, 22. Additionally, there are no web pages of the Accused Schaefer Website that are caused to be stored ***after*** a subsequent web page is displayed. *Id*.

157.     Defendant either knew or, pursuant to a reasonable analysis of the Accused Schaefer Website, should have known that its assertion against Schaefer was meritless, prior to sending the original Demand Letter on March 4, 2022.

158.     Alternatively, Defendant was made aware by Schaefer that its assertion was meritless during the Parties' numerous communications, as described and chronicled above, yet Defendant continued to demand payment from Schaefer for several months thereafter.

45

159.    Accordingly, the factor enumerated in § 75-143(a)(6) supports a finding of bad-faith assertion of patent infringement by Defendant.

160.    Fourth, under § 75-143(a)(7), bad faith patent infringement can be found if "[t]he claim or assertion of patent infringement is deceptive.

161.    Here, for the reasons stated above, Defendant should have known that its infringement theory was meritless, yet prepared and sent its Demand Letter (including seventeen claim charts) in which Defendant attempted to pass off the functionality of the Accused Schaefer Website as meeting the claim elements which Defendant knew (or should have known) cannot be met.

162.    For example, knowing full well that (1) "destination" as used in the Accused Patents refer to an external web site (as opposed to another web page on the same site, as explained in greater detail above), and (2) that no "top-level menu items" from a first web page are simultaneously displayed with content from a second web page, each of Defendant's claim charts deceptively try to pass off the Accused Schaefer Website as satisfying those two relevant portions of the claim language. *See, e.g.*, Exhibit 7, pgs. 14-15 (contending that the Accused Schaefer Website "display[s] at least a portion of content ***associated with the destination*** (e.g., some content ***associated with the new webpage***, etc.) ***simultaneously with the first set of one or more representations of the first set of one or more hyperlinks (e.g., top-level menu items, hyperlinks, etc.)***, so as to allow continued review (e.g., menu items remain visible, etc.) of the first set of one or more representations of the first set of one or more hyperlinks") (emphasis added).

163.    Accordingly, the factor enumerated in § 75-143(a)(7) supports a finding of bad-faith assertion of patent infringement by Defendant.

164.    Additional discovery may also reveal that additional factors support a finding of Defendant's bad faith assertion of patent infringement including but not limited to factors (8), (9), and (10).

<u>**COUNT I – DECLARATION OF NON-INFRINGEMENT OF U.S PATENT NO. 10,042,823**</u>
*(28 U.S.C. § 2201)*

165.    Schaefer restates and incorporates by reference the allegations in the preceding paragraphs (1-164) as if fully set forth herein.

166.    Schaefer has not infringed and does not infringe any valid and enforceable claim of the '823 Patent, whether literally or under the doctrine of equivalents.

167.    Additionally, Schaefer is not liable for any induced, contributory, divided, or any other indirect infringement of any valid and enforceable claim of the '823 Patent.

168.    Specifically, as explained in greater detail above, the Accused Schaefer Website does not meet at least the claim limitations relating to (1) "navigation to a destination" and (2) "display[ing] at least a portion of content of the destination simultaneously with the first set of one or more representations of one or more menu items."

169.    In light of the Defendant's Demand Letter, the Parties' licensing communications, and the threat of litigation, there exists a substantial, real and immediate controversy between Schaefer and Defendant concerning Schaefer's alleged infringement of the '823 Patent.

170.    Defendant's conduct towards Schaefer, combined with Defendant's admitted widespread licensing campaign and its history of filing patent infringement lawsuits, clearly demonstrates Defendant's intent to continue to threaten Schaefer with potential or actual litigation, despite Schaefer having communicated the aforementioned non-infringement theories to Defendant on several occasions.

47

171.     This controversy warrants the issuance of a declaratory judgment of non-infringement.  A judicial declaration is necessary and appropriate so that Schaefer may ascertain its rights and obligations vis-à-vis the '823 Patent.

172.     Schaefer therefore respectfully seeks a judicial declaration that it does not directly, indirectly or otherwise infringe any valid and enforceable claim of the '823 Patent.

## COUNT II – DECLARATION OF NON-INFRINGEMENT OF U.S PATENT NO. 10,078,623
### *(28 U.S.C. § 2201)*

173.     Schaefer restates and incorporates by reference the allegations in the preceding paragraphs (1-172) as if fully set forth herein.

174.     Schaefer has not infringed and does not infringe any valid and enforceable claim of the '623 Patent, whether literally or under the doctrine of equivalents.

175.     Additionally, Schaefer is not liable for any induced, contributory, divided, or any other indirect infringement of any valid and enforceable claim of the '623 Patent.

176.     Specifically, as explained in greater detail above, the Accused Schaefer Website does not meet at least the claim limitations relating to (1) "navigation to a destination" and (2) "display[ing] at least a portion of content of the destination simultaneously with the first set of one or more representations of one or more menu items."

177.     In light of the Defendant's Demand Letter, the Parties' licensing communications, and the threat of litigation, there exists a substantial, real and immediate controversy between Schaefer and Defendant concerning Schaefer's alleged infringement of the '623 Patent.

178.     Defendant's conduct towards Schaefer, combined with Defendant's admitted widespread licensing campaign and its history of filing patent infringement lawsuits, clearly demonstrates Defendant's intent to continue to threaten Schaefer with potential or actual litigation,

despite Schaefer having communicated the aforementioned non-infringement theories to Defendant on several occasions.

179. This controversy warrants the issuance of a declaratory judgment of non-infringement. A judicial declaration is necessary and appropriate so that Schaefer may ascertain its rights and obligations vis-à-vis the '623 Patent.

180. Schaefer therefore respectfully seeks a judicial declaration that it does not directly, indirectly or otherwise infringe any valid and enforceable claim of the '623 Patent.

## COUNT III – DECLARATION OF NON-INFRINGEMENT OF U.S PATENT NO. 10,372,793
*(28 U.S.C. § 2201)*

181. Schaefer restates and incorporates by reference the allegations in the preceding paragraphs (1-180) as if fully set forth herein.

182. Schaefer has not infringed and does not infringe any valid and enforceable claim of the '793 Patent, whether literally or under the doctrine of equivalents.

183. Additionally, Schaefer is not liable for any induced, contributory, divided, or any other indirect infringement of any valid and enforceable claim of the '793 Patent.

184. Specifically, as explained in greater detail above, the Accused Schaefer Website does not meet at least the claim limitations relating to (1) "navigation to a destination" and (2) "display[ing] at least a portion of content of the destination simultaneously with the first set of one or more representations of one or more menu items."

185. In light of the Defendant's Demand Letter, the Parties' licensing communications, and the threat of litigation, there exists a substantial, real and immediate controversy between Schaefer and Defendant concerning Schaefer's alleged infringement of the '793 Patent.

186. Defendant's conduct towards Schaefer, combined with Defendant's admitted widespread licensing campaign and its history of filing patent infringement lawsuits, clearly

49

demonstrates Defendant's intent to continue to threaten Schaefer with potential or actual litigation, despite Schaefer having communicated the aforementioned non-infringement theories to Defendant on several occasions.

187.    This controversy warrants the issuance of a declaratory judgment of non-infringement.  A judicial declaration is necessary and appropriate so that Schaefer may ascertain its rights and obligations vis-à-vis the '793 Patent.

188.    Schaefer therefore respectfully seeks a judicial declaration that it does not directly, indirectly or otherwise infringe any valid and enforceable claim of the '793 Patent.

## COUNT IV – DECLARATION OF NON-INFRINGEMENT OF U.S PATENT NO. 10,482,164
*(28 U.S.C. § 2201)*

189.    Schaefer restates and incorporates by reference the allegations in the preceding paragraphs (1-188) as if fully set forth herein.

190.    Schaefer has not infringed and does not infringe any valid and enforceable claim of the '164 Patent, whether literally or under the doctrine of equivalents.

191.    Additionally, Schaefer is not liable for any induced, contributory, divided, or any other indirect infringement of any valid and enforceable claim of the '164 Patent.

192.    Specifically, as explained in greater detail above, the Accused Schaefer Website does not meet at least the claim limitations relating to (1) "the set of one or more representations of one or more hyperlinks [being] displayed … at least partially below the one of the set of one or more representations of one or more menu items," and (2) "causing storage of the web page."

193.    In light of the Defendant's Demand Letter, the Parties' licensing communications, and the threat of litigation, there exists a substantial, real and immediate controversy between Schaefer and Defendant concerning Schaefer's alleged infringement of the '164 Patent.

194. Defendant's conduct towards Schaefer, combined with Defendant's admitted widespread licensing campaign and its history of filing patent infringement lawsuits, clearly demonstrates Defendant's intent to continue to threaten Schaefer with potential or actual litigation, despite Schaefer having communicated the aforementioned non-infringement theories to Defendant on several occasions.

195. This controversy warrants the issuance of a declaratory judgment of non-infringement. A judicial declaration is necessary and appropriate so that Schaefer may ascertain its rights and obligations vis-à-vis the '164 Patent.

196. Schaefer therefore respectfully seeks a judicial declaration that it does not directly, indirectly or otherwise infringe any valid and enforceable claim of the '164 Patent.

## COUNT V – DECLARATION OF NON-INFRINGEMENT OF U.S PATENT NO. 11,308,260
*(28 U.S.C. § 2201)*

197. Schaefer restates and incorporates by reference the allegations in the preceding paragraphs (1-196) as if fully set forth herein.

198. Schaefer has not infringed and does not infringe any valid and enforceable claim of the '260 Patent, whether literally or under the doctrine of equivalents.

199. Additionally, Schaefer is not liable for any induced, contributory, divided, or any other indirect infringement of any valid and enforceable claim of the '260 Patent.

200. Specifically, as explained in greater detail above, the Accused Schaefer Website does not meet at least the claim limitation relating "navigation to a destination."

201. In light of the Defendant's Demand Letter, the Parties' licensing communications, and the threat of litigation, there exists a substantial, real and immediate controversy between Schaefer and Defendant concerning Schaefer's alleged infringement of the '260 Patent.

202.    Defendant's conduct towards Schaefer, combined with Defendant's admitted widespread licensing campaign and its history of filing patent infringement lawsuits, clearly demonstrates Defendant's intent to continue to threaten Schaefer with potential or actual litigation, despite Schaefer having communicated the aforementioned non-infringement theories to Defendant on several occasions.

203.    This controversy warrants the issuance of a declaratory judgment of non-infringement.  A judicial declaration is necessary and appropriate so that Schaefer may ascertain its rights and obligations vis-à-vis the '260 Patent.

204.    Schaefer therefore respectfully seeks a judicial declaration that it does not directly, indirectly or otherwise infringe any valid and enforceable claim of the '260 Patent.

<div align="center">

**COUNT VI – VIOLATION OF THE
NORTH CAROLINA ABUSIVE PATENT ASSERTION ACT**
*(N.C. Gen. Stat. §§ 75-140, et seq.)*

</div>

205.    Schaefer restates and incorporates by reference the allegations in paragraphs 1-204 of this Complaint as if fully set forth herein.

206.    Defendant's assertion of patent infringement against Schaefer—as demonstrated in the Demand Letter, the accompanying claim charts, and during the Parties' telephonic conferences and email correspondence—is both objectively baseless and made in bad faith.

207.    For example, as evidenced by the Demand Letter itself and the accompanying claim charts, Defendant failed to conduct a reasonable comparison of the claims of the Asserted Patents to the Accused Schaefer Website. Any reasonable investigation would have revealed that the Accused Schaefer Websites does not infringe any valid and enforceable claim of the Asserted Patents. Yet Defendant has continued to assert its meritless claims of infringement despite repeated attempts by Schaefer to explain why the Accused Schaefer Website cannot possibly infringe. *See N.C. Gen. Stat.* §75-143(a)(2), (6), (7).

<div align="center">52</div>

208. Defendant's conduct to date, including as evidenced by the Demand Letter and accompanying licensing demand, as well as Defendant's demonstrated and admitted conduct of broadly asserting the Asserted Patents (including in litigation), demonstrate that Defendant's licensing demand is not based on a reasonable estimate of the value of the Asserted Patents to Schaefer, but instead on the cost of defending a potential or actual lawsuit. *See id.* §75-143(a)(5).

209. As a result of Defendant's objectively baseless and subjectively bad faith and abusive assertions that the Accused Schaefer Website infringes the Asserted Patents, Schaefer has suffered and continues to suffer damages and incur costs, fees (including attorneys' fees), and other harm, all of which are recoverable under the North Carolina Abusive Patent Assertion Act. *See id.* §§ 75-145(b)(1)-(3).

210. Schaefer seeks both equitable relief enjoining Defendant from continuing to assert the Asserted Patents against the Accused Schaefer Website as well as recovery of its damages, costs, and fees, together with an award of exemplary damages in an amount equal to $50,000 or three (3) times the total of damages, costs, and fees, whichever is greater. *See id.* §§ 75-145(b)(1)-(4).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Schaefer Systems International, Inc. respectfully requests the following relief:

A. A declaration that Schaefer has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of U.S. Patent No. 10,042,823, whether literally or under the doctrine of equivalents;

B.      A declaration that Schaefer has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of U.S. Patent No. 10,078,623, whether literally or under the doctrine of equivalents;

C.      A declaration that Schaefer has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of U.S. Patent No. 10,372,793, whether literally or under the doctrine of equivalents;

D.      A declaration that Schaefer has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of U.S. Patent No. 10,482,164, whether literally or under the doctrine of equivalents;

E.      A declaration that Schaefer has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of U.S. Patent No. 11,308,260, whether literally or under the doctrine of equivalents;

F.      An order declaring that this is an exceptional case and awarding Schaefer its costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927;

G.      An order finding Defendant's conduct to be in violation of the North Carolina Abusive Patent Assertion Act (N.C. Gen. Stat. § 75-140 *et seq*.) (the "APAA)" and awarding to Schaefer all remedies contemplated by the APAA, including but not limited to all damages, costs, expenses, and fees (including attorneys' fees) incurred by Schaefer as a result of Defendant's bad faith assertion of patent infringement, together with all pre- and post-judgment interest as provided by law, as well as equitable relief to estop Defendant from continuing to assert the Asserted Patents against Schaefer;

H.     All such other and further relief, both at law and in equity, which the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Schaefer Systems International, Inc. hereby demands a trial by jury of all issues so triable.

This the 29th day of September, 2022.

Respectfully submitted,

/s/ Samuel Alexander Long, Jr.
Samuel Alexander Long, Jr. (N.C. Bar No. 46588)
Tom BenGera (N.C. Bar No. 57019)
Lucas D. Garber (N.C. Bar No. 47756)
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon St., Suite 2200
Charlotte, North Carolina 28280-0002
Telephone: 704-945-2911
Fax: 704-332-1197
Email: along@shumaker.com
        tbengera@shumaker.com
        lgarber@shumaker.com

***Attorneys for Plaintiff Schaefer Systems International, Inc.***

55