IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00513-KDB-DCK

| | |
|---|---|
| SCHAEFER SYSTEMS INTERNATIONAL, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ALOFT MEDIA, LLC,<br>TODD SCHMIDT,<br>GEORGE STREET PARTNERS,<br>AND GEORGE ANDREW GORDON,<br><br>    Defendants. | <u>ORDER</u> |

**THIS MATTER** is before the Court on Defendants' Motions to Dismiss (Doc. Nos. 44, 67, 69). The Court has carefully considered these motions, the parties' briefs, and exhibits. For the reasons discussed below, the Court will **DENY** the Defendants' motions.

## I.    LEGAL STANDARD

A party invoking federal jurisdiction has the burden of establishing that personal jurisdiction exists over the defendants. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, when "the court addresses the question [of personal jurisdiction in a Rule 12(b)(2) motion] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the

1

plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676 (internal citations omitted). While a plaintiff "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist," *IMO Indus., Inc. v. Seim S.R.L.*, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006), if a plaintiff comes "forward with affidavits or other evidence to counter that of the defendant ... factual conflicts must be resolved in favor of the party asserting jurisdiction...." *Id.*

In deciding whether this Court has personal jurisdiction over a defendant, the Court must determine: (1) whether the North Carolina long-arm statute confers personal jurisdiction; and (2) whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. *Gen Latex & Chem. Corp. v. Phoenix Med. Tech.*, 765 F. Supp. 1246, 1248-49 (W.D.N.C. 1991). Because the North Carolina long-arm statute extends jurisdiction to the bounds of due process, the statutory inquiry ultimately merges with the constitutional inquiry, becoming one. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

Under this due process analysis, a court may exercise personal jurisdiction "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980) (explaining that this principle "protects ... defendant[s] against the burdens of litigating in a distant or inconvenient forum" and "acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system"); *see also Wallace v. Yamaha Motors Corp, U.S.A.*, No. 19-2459,

2022 WL 61430, at *2–3 (4th Cir. Jan. 6, 2022). There are two types of constitutionally permissible personal jurisdiction – general and specific. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (referring to general jurisdiction as "all-purpose" jurisdiction and specific jurisdiction as "case-linked" jurisdiction). General jurisdiction "requires continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. V. Inst of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n. 15 (4th Cir. 2009) (internal quotations omitted). Specific jurisdiction "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in the state." *Id*.

To decide whether specific jurisdiction exists, the Court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 396 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002)). For the first element, a defendant has availed itself of the privilege of conducting business in a state—and thus the benefits and protections of the state's laws—when the defendant "'deliberately' has engaged in significant activities within a [s]tate" or "has created 'continuing obligations' between [itself] and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984), and *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643, 648 (1950)). This standard "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," or due to "the 'unilateral activity of another party

or a third person.'" *Id.* at 475 (quoting *Keeton*, 465 U.S. at 774, *World-Wide Volkswagen*, 444 U.S. at 299, and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

For the second element—whether a plaintiff's claims arise out of a defendant's activities directed at the state—"there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers*, 582 U.S. at 264 (alteration in original). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

For the third element, the Court considers the constitutional reasonableness of exercising jurisdiction by evaluating several factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001) (quoting *Burger King*, 471 U.S. at 477). In other words, the exercise of jurisdiction should not "make litigation 'so gravely difficult and inconvenient' that a party is unfairly at a 'severe disadvantage' in comparison to his opponent." *Id.* (quoting *Burger King*, 471 U.S. at 478).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions,

4

elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id.* Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Schaefer Systems International, Inc. ("Schaefer") provides storage materials handling, robotics, warehouse management software, and autonomous driverless solutions to businesses throughout North America. Doc. No. 28 at ¶ 7. Schaefer is a North Carolina corporation with its principal place of business in Charlotte, North Carolina. *Id.* at ¶ 6. Schaefer is owned by SSI Schäfer Holding International, GmbH. *Id.* at ¶ 518. SSI Schäfer is in turn owned by Fritz Schäfer GmbH & Co KG. *Id*. Both parent corporations are foreign entities with principal places of business in Germany. *Id.* ¶¶ 515, 518.

Defendant Aloft Media, LLC ("Aloft") is a Texas limited liability company with its principal place of business in Texas. Defendant George Andrew Gordon, an attorney registered with the United States Patent and Trademark Office, is the managing member and registered agent of Aloft and has an address in Frisco, Texas. *Id.* ¶¶ 11, 12. Defendant George Street Partners ("GSP") is an Illinois corporation with its principal place of business in Indiana. *Id.* at ¶ 17. Defendant Todd Schmidt is an individual residing in Indiana and is the President of GSP. *Id.* ¶¶

5

21, 22. Aloft retained GSP to act as its licensing representative in discussions with Schaefer. *Id.* ¶ 20.

Schaefer was first contacted by Defendants via a demand letter dated March 4, 2022. *Id.* at ¶ 502. The demand letter, addressed to "SSI Schaefer" at 10021 Westlake Drive, Charlotte, NC 28273, stated that Aloft was the owner of a portfolio of patents and Schaefer was potentially infringing on at least one patent in the portfolio. *See* Doc. No. 29-6. Attached to the demand letter was a patent "claim chart" purporting to describe the alleged infringement and a proposed licensing agreement between Aloft and Schaefer. *Id.* The website the Defendants claim is responsible for the infringement set forth in the claim chart refers to "Schaefer Systems International, Inc." Doc. No. 28 at ¶ 513. The demand letter from Aloft identified GSP and Schmidt as Aloft's authorized agent and was signed by Gordon. Doc. No. 28 at ¶ 503.

The proposed licensing agreement between Aloft and Schaefer, attached to the demand letter, provided a form agreement for Schaefer to complete. *See* Doc. No. 29-6. The signature line in the proposed license agreement referred to Schaefer as "A _____ Corporation," apparently intending for Schaefer to fill in the blank with the U.S. state in which it is incorporated. *See* Doc. No. 28 at ¶ 510. The proposed agreement also stated that it referred only to "U.S. Patents and Applications of Aloft Media, LLC." *Id.* at ¶ 511. This offer to license the patent was made to numerous and various other entities with a substantially similar monetary demand. *Id.* at ¶ 548.

Schaefer responded to the demand letter and its contents on March 16, 2022. *Id.* at ¶ 515. In the response letter, which was addressed to Mr. Gordon, Schaefer stated that Defendants were communicating with Schaefer Systems International, Inc and not one of the foreign parent entities. *Id.* After receiving notice that Defendants were in contact with Schaefer (as distinguished from

6

one of the foreign parent entities) Defendants then contacted Schaefer at least ten more times. *Id.* at ¶ 528.

Schaefer filed this action on September 29, 2022, alleging that Aloft's asserted patents are invalid and/or unenforceable, and that Schaefer does not infringe any valid and enforceable claim of any of the asserted patents. *Id.* at ¶ 5. Specifically, Schaefer is seeking a declaration of both noninfringement and invalidity as to these patents under the Declaratory Judgement Act, 28 U.S.C. § 2201. *Id*. Also, Schaefer alleges that Defendants have violated the North Carolina Abusive Patent Assertion Act ("NC APAA"), which makes bad faith assertions of patent infringement unlawful.

All Defendants have now moved to dismiss the Amended Complaint on the grounds that the Court lacks personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and Defendants Gordon, GSP, and Schmidt have moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), in particular Schaefer's claim under the NC APAA. The pending motions have been fully briefed by all parties and are now ripe for the Court's decision.

### III. DISCUSSION

**A. Defendants' 12(b)(2) Motions to Dismiss**

As stated above, to determine whether an exercise of personal jurisdiction over a defendant is appropriate, the Court must consider whether "the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst*, 334 F.3d at 397 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Defendants contend that this Court does not have personal jurisdiction in this case as Plaintiff fails to establish general jurisdiction, specific jurisdiction, or special jurisdiction under the NC APAA. The Court finds that while Defendants are not subject to general

7

jurisdiction in this forum, the Court can properly exercise personal jurisdiction over all Defendants by way of specific jurisdiction, including special jurisdiction under the NC APAA.

### i. General Jurisdiction

The Court finds that the Amended Complaint falls well short of establishing a prima facie showing of general jurisdiction. A court can properly assert general jurisdiction over a defendant when the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Bristol-Meyers Squibb Co.* 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 924.) A corporation is at home in the state of its principal place of business and its state of incorporation. *Daimler AG*, 571 U.S. at 139.

Plaintiffs assert that Defendants direction of patent licenses into North Carolina, including the demand letter and following communications directed at Plaintiff, is sufficient for a prima facie showing of general jurisdiction. Doc. No. 28 at ¶ 46. The Court disagrees. The Defendants include Aloft (principal place of business and incorporation in Texas), GSP (principal place of business in Indiana and incorporation in Illinois), Schmidt (Indiana resident), and Gordon (Texas resident). Plaintiffs have not made any showing, other than an assertion that there have been "several communications directed into this state," (Doc. No. 72), that would allow the Court to find that these Defendants are in any meaningful way "at home" in North Carolina. Thus, this Court does not have general jurisdiction over Defendants.

8

Case 3:22-cv-00513-KDB-DCK   Document 79   Filed 06/16/23   Page 8 of 15

### ii. Specific Jurisdiction

However, the Court finds that it has specific jurisdiction over the Defendants. As outlined above, to determine whether there are sufficient minimum contacts for specific personal jurisdiction, the Court considers three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the . . . claims [arose] out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014).

Plaintiff contends that it has established specific jurisdiction based on Defendants' communication into North Carolina. The Court agrees. In *Renfinity Inc. v. Jones*, this Court held that "[i]n the context of an allegation of fraud, if the defendant's conduct or the content of its communications directed into the forum state give rise to the claim then that is sufficient to establish purposeful availment." 2022 WL 332782, at *4 (W.D.N.C. Feb. 3, 2022) (citing *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1068 (4th Cir. 1982); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)). In *Vishay*, the 4th Circuit found that, despite the defendant's lack of contacts with North Carolina, personal jurisdiction had been established on the basis of the "three letters" and "five telephone calls" used to solicit a purchase order agreement. 696 F.2d at 1068. In making this finding, the court reasoned that an analysis of the quantity of contacts with North Carolina is inappropriate when the defendant's contacts with the state are essential to the plaintiff's claims. *Id.* at 1068-69. Thus, a plaintiff has made a prima facie showing that defendants have purposely availed themselves of the benefits of a North Carolina forum when they have alleged deliberate conduct and communications directed into North Carolina in furtherance of a fraudulent scheme. *See Renfinity Inc.*, 2022 WL 332782, at *4.

9

Plaintiff's claims in this action are analogous to those described in *Renfinity* and *Vishay*. The crux of Plaintiff's complaint is that Defendants' allegations of patent infringement were made in bad faith and are unlawful under the NC APAA. Plaintiff has alleged that this patent infringement scheme was carried out by Defendants through the exchange of documents, email correspondence, and telephone conferences, all directed at Schaefer in Charlotte, North Carolina. Doc. No. 28 at ¶¶ 2, 502, 509. While Plaintiff has alleged eleven emails and two telephone conferences, (*id.* at ¶ 528), the analysis of specific jurisdiction ought not be only quantitative, but rather must focus on the alleged deliberate activities by Defendants and their significance. North Carolina has made the significance of the defendants' activities clear through its adoption of the NC APAA, thereby demonstrating the State's interest in deterring the scheme that Plaintiff has alleged.

Defendants argue that there was never intentional contact with a North Carolina corporation and all contact was instead directed toward Schaefer's German parent entity; thus, they never purposely availed themselves of a North Carolina forum. Doc. Nos. 45, 68, 70. The Court finds Defendants' claimed ignorance toward Plaintiff's location unconvincing, particularly in light of the Court's standard of review. Plaintiff has proffered a demand letter that Defendants addressed to the North Carolina place of business, (Doc. No. 29-6), evidence of continued contact with Plaintiff's patent counsel after Defendants were notified that they were communicating with Schaefer, (Doc. No. 29-16), and an affidavit that Defendants reliance on the Sustainability Report

as a source of confusion is an impossibility, (Doc. No. 48-1).[1] Discovery may shed a different light on these allegations, but for now, the Court finds Plaintiff has made a prima facie showing of purposeful availment by the Defendants.

Second, with respect to whether Plaintiff's claims arose out of the activities directed at the State, the Court finds, as discussed above, that Plaintiff has sufficiently alleged that the unlawful patent infringement claims relate directly to the demand letter and subsequent communications sent into North Carolina.

Finally, the Court holds that the exercise of personal jurisdiction over Defendants would be constitutionally reasonable. While Defendants might naturally prefer to defend against Plaintiff's claims in a different forum, such as Texas, there has been no showing that it would be unduly burdensome for Defendants to litigate in this Court. Also, North Carolina has a substantial interest in this action. Defendants' contacts with North Carolina are essential elements of Plaintiff's claims, Plaintiff seeks relief under the NC APAA, and North Carolina was Plaintiff's principal place of business during the relevant time period. There is no apparent reason that this action cannot be effectively and efficiently tried in this Court, as Plaintiff has requested. Therefore, the exercise of jurisdiction in this Court will not "make litigation 'so gravely difficult and inconvenient' that Defendants are unfairly at a 'severe disadvantage'…" *See Burger King*, 471 U.S. at 478.

---

[1] Defendants argue that the use of "SSI Schaefer" in their demand letter does not refer to the North Carolina company, but rather the German parent entity. In support of this argument, Defendants reference "Sustainability Report 2021" to show that the report frequently uses the shorthand "SSI Schaefer" to refer to the Group worldwide, but not once uses it to identify Plaintiff. Doc. Nos. 45 at 8, 68 at 13, 70 at 13. Whatever the merits of Defendants' argument, this report was published approximately *six months after* Defendants sent the demand letter to Plaintiff. Therefore, Defendants' reliance on the report as the source of their confusion is not only a temporal impossibility, but risks undermining Defendants' credibility with the Court.

11

In summary, Plaintiff has established that Defendants have sufficient minimum contacts with North Carolina to support this Court's exercise of personal jurisdiction over Defendants.

### iii. NC APAA Special Jurisdiction

Additionally, the Court finds that it has special jurisdiction over Defendants under the NC APAA. The NC APAA directly addresses the issue of North Carolina's jurisdiction over out-of-state defendants accused of violating the statute thus establishing itself as a "special jurisdiction" statute. *See* N.C. Gen. Stat. § 75-145(e). Specifically, the law provides that in any action arising under "subsection (a) or (b)" any person that has sent "a demand to a target in North Carolina has purposefully availed himself or herself of the privileges of conducting business in this State and shall be subject to suit in this State." *Id*. A North Carolina person meets the definition of "target" by satisfying one of three categories. *Id*. The first of the three categories defines "target" as a "person [that] has received a demand or is the subject of an assertion or allegation of patent infringement." *Id*. Plaintiff is a North Carolina corporation that has received a demand letter and subsequent communications from Defendants alleging patent infringement. As discussed below, this action properly "arises" in part from an alleged violation of subsection (a) of the NC APAA; therefore, Plaintiff has established special jurisdiction under the statute[2] as an additional grounds for the Court exercising specific personal jurisdiction over Defendants.

### B. Defendants Gordon, Schmidt, and George Street Partners' 12(b)(6) Motions to Dismiss

In addition to their contention that the Court lacks personal jurisdiction over them, Defendants Gordon, Schmidt and George Street Partners (the "12(b)(6) Defendants") have moved to dismiss Schaefer's claim brought under the NC APAA for failure to state a claim under Fed. R.

---

[2] The exercise of personal jurisdiction pursuant to the NC APAA is also constitutionally reasonable for the reasons discussed above in the broader discussion of specific jurisdiction.

12

Civ. Proc. 12(b)(6).[3] As with their jurisdictional arguments, the Court finds that the motion should be denied. As discussed briefly below, the Amended Complaint, construed in accordance with the applicable standard of review of a 12(b)(6) motion, plausibly alleges that these Defendants violated the NC APAA.

The NC APAA makes it "unlawful for a person to make a bad-faith assertion of patent infringement." N.C. Gen. Stat § 75-143. The statute seeks to "strike a balance between … the interests of efficient and prompt resolution of patent infringement claims, protection of North Carolina businesses from abusive and bad-faith assertions of patent infringement, and building of North Carolina's economy" and respect for federal patent law and legitimate patent enforcement actions. *See* N.C. Gen. Stat. § 75-141. Indeed, to accomplish its admittedly "narrowly tailored" goal, the NC APAA lists nineteen non-exclusive factors (two of the factors are "any other factor the Court finds relevant") that a court "may consider" as evidence that a person has made or has not made a bad-faith assertion of patent infringement. *See* N.C. Gen. Stat. § 75-141, § 75-143 (a)-(b).

In their motions, the 12(b)(6) Defendants argue that the Court should find that, as a matter of law, Plaintiff cannot establish the "bad-faith" requirement for a violation of the NC APAA. More specifically, these Defendants argue that the "claim charts" included with their notice / demand letters as well as other aspects of their efforts to convince Plaintiff to pay to license their patents establish the absence of bad faith under the statute. *See* Doc. No. 70 at 16-19. However, acceptance of these arguments – which asks the Court to dismiss the case based on Defendants'

---

[3] Defendant Aloft has not moved to dismiss the Complaint for failure to state a claim, only asserting the personal jurisdictional arguments discussed above.

13

Case 3:22-cv-00513-KDB-DCK   Document 79   Filed 06/16/23   Page 13 of 15

characterization of their licensing efforts which is disputed by Plaintiff – would turn the standard of review of a 12(b)(6) motion on its head.

Even ignoring the NC APAA's statutory framework which makes clear that each of the enumerated factors is only a potential consideration to be weighed in the context of the totality of the evidence, the Amended Complaint includes detailed allegations supporting Plaintiff's claim that Defendants' conduct constitutes a bad-faith assertion of patent infringement. *See* Doc. No. 28 at pp.129-142. These allegations, which, again, must be accepted as true for the purposes of these motions, include specific contentions directed at several of the Section 75-143(a) factors, including §§ 75-143(a)(1)-(3), (6), (7) (the mere existence of a claim chart does not absolve an alleged "patent troll" from liability under the NC APAA because an inadequate, meritless, or deceptive claim chart can also evidence bad faith); §§ 75-143(a)(4) (timing of demand letter alleged to be unreasonable) and § 75-143(a)(5) (monetary demand allegedly "not based on a reasonable estimate of the value of the license").

In sum, while discovery and later proceedings will determine whether Plaintiff can ultimately prevail on its claims under the NC APAA, at this early stage of the case, Plaintiff has more than sufficiently alleged a plausible claim that each of the Defendants violated the statute. Accordingly, the 12(b)(6) Defendants motion to dismiss for failure to state a claim will be denied.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motions to Dismiss (Doc. Nos. 44, 67, 69) are **DENIED**; and

2. This case shall proceed to trial on the merits in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 16, 2023

Kenneth D. Bell
United States District Judge